UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

INTERNATIONAL AUTO GROUP　　　　　　　Case No. 17-13165-JKO
OF SOUTH FLORIDA, INC.

　　　　　　　　　　　　　　　　　　　　　Chapter 11

　　　Debtor.
_____/

**DEBTOR'S MOTION TO APPROVE SETTLEMENT AGREEMENT**

Debtor-in-possession, International Auto Group of South Florida, Inc. (the "Debtor" or "Borrower"), by and through undersigned counsel, hereby respectfully moves the Court for entry of an order approving the compromise agreement by and between the Debtor and NextGear Capital, Inc. ("NextGear") (the "Agreement"), a copy of which is attached hereto and incorporated herein as **EXHIBIT 1**. In support of the Motion, the Debtor states as follows:

**BACKGROUND**

1.　On March 16, 2017, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date").

2.　Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtor is operating its business and managing its affairs as a debtor in possession. As of the date hereof, no trustee, examiner, or statutory committee has been appointed in this chapter 11 case.

3.　The Debtor operates a car dealership specializing in investment grade classic, collector, muscle and exotic vehicles.

4.　The Debtor finances its automobile inventory through floor plan financing provided by NextGear.

5.　On March 27, 2017, NextGear filed an *Emergency Motion for Relief from the Automatic Stay* (the "Stay Relief Motion") [ECF No. 27] that alleged *inter alia* that the Debtor

owed NextGear $7,943,433.43, and that it has a blanket lien on the Debtor's assets, and sought stay relief with respect to its collateral.

6. On the same day, the United States Trustee filed an *Expedited Motion to Appoint a Trustee or, Alternatively, to Dismiss or Convert Case and Request for an Expedited Hearing* (the "Trustee Motion") [ECF No. 29] premised upon the facts alleged by NextGear in the Stay Relief Motion.

7. After hearing testimony from the Debtor's principal, Arthur Siegle, during a hearing on March 29, 2017, NextGear and the Debtor agreed, and the Court permitted, that the hearing on the Stay Relief Motion and Trustee Motion could be continued to a later date. The parties subsequently agreed, and the Court permitted, that such hearings be continued to April 25, 2017 in order to permit the Debtor and NextGear to negotiate a global settlement [ECF Nos. 41, 42].

8. The Debtor and NextGear have been able to reach a global resolution, which terms are set forth in the Agreement attached hereto and incorporated herein as Exhibit 1.

## MATERIAL TERMS OF THE AGREEMENT

9. The Agreement fully sets forth all the terms of the Agreement between the Parties. The material terms are set forth below, and in the event there is an inconsistency between the terms below and the Agreement, the Agreement shall govern.

    a. **RATIFACTION OF LOAN DOCUMENTS.** Borrower hereby ratifies and affirms its obligations under the Note,[1] Guaranty, and all other instruments or documents executed in connection with the lender-borrower relationship between the Parties (the "Loan Documents"). Except as otherwise set forth herein, the Loan Documents shall remain in full force and effect, and this Agreement shall not in any manner operate as a waiver of, consent to, or amendment of any other term, condition, covenant, or representation set forth in any of the Loan Documents. Notwithstanding anything to the contrary under the Loan Documents, or otherwise at law or equity, NextGear remains a

---

[1] Capitalized terms not defined herein shall have the definitions provided for in the Agreement.

{2111/000/00363124}     2

discretionary lender, and the decision whether to make any loan advance under the Note shall be in the sole and unfettered discretion of NextGear.

b. **GENERAL RELEASE OF NEXTGEAR.** As consideration for this Agreement, Borrower (on behalf of itself and its officers, directors, shareholders, employees, agents, parents, affiliates, subsidiaries, successors, and assigns) hereby RELEASES AND DISCHARGES NextGear Capital (and NextGear Capital's officers, directors, shareholders, employees, agents, parents, affiliates, subsidiaries, successors, and assigns) from any and all claims, suits, demands, or other causes of action of any type or nature (whether arising under contract, tort, or otherwise under law or equity) from the beginning of time through the Effective Date of this Agreement.

c. **INCORPORATION OF CASH COLLATERAL ORDER.** Sections 4(H) and 6(D) of the Interim Cash Collateral Order are hereby incorporated by reference into this Agreement, and shall survive the termination of the Bankruptcy Case and a notwithstanding Section 349 of the U.S. Bankruptcy Code.

d. **CONDITIONAL FORBEARANCE.** NextGear Capital agrees to forbear from declaring an Event of Default, and/or exercising its default remedies, for any acts or omissions of Borrower or any Guarantor that may have arisen prior to March 30, 2017, including, *without limitation*, the creation of the Bankruptcy Case, the failure to provide access to books and records, or any acts or omissions that incurred in connection with the Sold Units and/or their proceeds. Notwithstanding the foregoing, nothing herein shall constitute a waiver of any defaults now existing or hereafter arising. This forbearance shall remain in full force effect until the earliest of: (1) Borrower defaults under any terms, conditions, or covenants contained herein; (2) from and after April 1, 2017, Borrower otherwise defaults under the Loan Documents, as such Loan Documents are amended hereunder; (3) Borrower, any Guarantor, or any related party takes any legal action against NextGear Capital; or (4) April 1st, 2018.

e. **PERFORMANCE**. During any such time period while Borrower is indebted to NextGear Capital under the Loan Documents (including the Indebtedness, or any future indebtedness hereafter arising), unless otherwise excused by NextGear in writing, Borrower shall perform the following, or cause the following to be performed:

   i. Single Depository Institution. Any proceeds from the Collateral shall be deposited in Borrower's financial institution accounts with T.D. Bank (the "Accounts"). In the event Borrower decides to switch financial institutions, Borrower shall immediately notify NextGear in writing.

   ii. Documents. Daily, on or before Borrower's close of business, Borrower shall provide copies of bills of sale for each item of

        Collateral that is sold during that day, as well as funding notices pertaining to the receipt of funds on that particular day for any item of Collateral. Each week, on or before Friday at 5:00 P.M., Borrower shall provide NextGear with updated statements of the Accounts.

    iii. <u>Budgets</u>. Each month, on or before the first business day, Borrower shall submit a budget for expenditures during the next thirty (30) days for NextGear's consent and approval. Borrower shall not deviate from the budget by more than ten percent (10%) without obtaining NextGear's prior, express written consent.

    iv. <u>Prohibitions.</u> Without obtaining NextGear's prior, express written consent, which shall not be reasonably withheld, conditioned or delayed, Borrower shall not (a) not acquire any new item of motor vehicle inventory; (b) borrow money from any other lender (whether under a secured or unsecured basis), except that Borrower may use its existing credit line with Automotive Finance Corporation up to Five Hundred Thousand Dollars ($500,000.00); or (c) sell any NextGear PMSI Vehicle at any automotive auction. Without obtaining NextGear's prior, express written consent, Dealer may not sell any NextGear PMSI Vehicle for less than the balance owed for that vehicle at the time of sale.

    v. <u>Surrender of Cash Proceeds</u>. Without limiting, modifying, or otherwise reducing Borrower's obligations under the Interim Cash Use Order, upon the dismissal of the Bankruptcy Case, Borrower shall immediately surrender all proceeds from the sale of any unit of NextGear PMSI Vehicles. Such funds shall be applied to reduce the portion of Indebtedness stemming from the Sold Units, and NextGear shall determine which Sold Units to apply to.

f. **APPLICATION OF SOLD DEBT.** The remaining Sold Debt that exists after the dismissal of the Bankruptcy Case and Borrower's compliance with Section 6(E) above shall be applied and attributed and added to any other, unsold NextGear PMSI Vehicles, as NextGear may determine in its sole discretion.

g. **ASSIGNMENT.** This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective heirs, executors, administrators, assigns, legal representatives, and successors-in-interest.

h. **MERGER.** This Agreement represents the entire agreement between the Parties concerning the limited forbearance being granted hereunder and/or the Settled SOT Units or SOT Indebtedness. There are no other written or oral agreements between the Parties which purport to grant limited forbearance, and no promise, enticement or agreement not herein expressed has been made.

**BASIS FOR RELIEF REQUESTED**

10. The Court has broad discretion to approve a settlement, and it should do so unless the terms of the proposed settlement fall below the lowest point in the range of reasonableness. *In re Bi-Coastal Corp.*, 164 B.R. 1009 (Bankr. M.D. Fla. 1993); *see also In re Arrow, Inc.*, 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988). The Eleventh Circuit has articulated certain factors to be considered in determining whether to approve a settlement, which are: a) the probability of success in the litigation; b) the difficulties, if any, to be encountered in the matter of collection; c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and d) the paramount interest of the creditors and a proper deference to their reasonable views. *In re Justice Oaks II, Ltd.*, 898 F.2d 1544 (11th Cir. 1990) *cert. denied* 498 U.S. 959 (1990).

11. In the instant case, the *Justice Oaks* factors weigh in favor of approving the terms of the Agreement. The Agreement resolves the disputes that arose between the Debtor and NextGear, including the dispute with respect to the Sold Debt which will be applied and attributable to any other unsold NextGear MRSI Vehicles. The Agreement also reinstates the obligations between the parties under the terms of the Loan Documents, provides for a forbearance by NextGear from declaring an event of default for acts or omissions prior to March 30, 2017, and provides for additional reporting requirements. By entering into the Agreement, the Debtor will be able to resolve the foregoing issues without incurring any additional expense, and to continue operating as a viable enterprise. The Debtor intends to seek dismissal of the above-referenced bankruptcy case, and pay the allowed claims of creditors in full.

12. The Agreement represents the efforts of the parties to negotiate a consensual resolution of the issues raised in the Stay Relief Motion, and other issues between the parties. The Agreement was negotiated in good faith, with compromise among the parties to reach a

mutually acceptable resolution. The Agreement resolves the aforementioned disputes in a manner that within the reasonable range of the dispute between the parties.

13. In light of the uncertainties, delay and costs associated with litigating the various disputed matters, the Debtor believes that approval of the Agreement is in the best in interest of the bankruptcy estate and all creditors.

14. The Debtor recommends approval of the Agreement because it is fair, reasonable and in the best interest of the estate and its creditors.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order: i) approving the Agreement in its entirety, and ii) granting the Debtor such further relief this Court deems just and proper.

Respectfully Submitted,

**SHRAIBERG, LANDAU & PAGE, P.A.**
Attorneys for the Debtor
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
bss@slp.law

By: /s/ Bradley S. Shraiberg
     Bradley S. Shraiberg
     Florida Bar. No. 121622

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing by CM/ECF to all parties registered to receive such service in this case on this the 20th day of April, 2017.

                                              /s/ Bradley S. Shraiberg
                                              Bradley S. Shraiberg

# EXHIBIT 1

**COMPROMISE AGREEMENT**

This Compromise Agreement ("**Agreement**") is entered into by and between NextGear Capital, Inc. ("**NextGear**") and International Auto Group of South Florida, Inc. ("**Borrower**" and collectively with NextGear, the "**Parties**") and is effective upon the approval of the United States Bankruptcy Court (the "**Effective Date**").

**RECITALS**

A.  Effective May 13, 2013, the Borrower and NextGear entered into a Demand Promissory Note and Loan and Security Agreement (the "**Note**") pursuant to which NextGear granted the Borrower a line of credit in the amount of One Million Dollars ($1,000,000.00) for the purchase of motor vehicle inventory. The Note was amended on May 15, 2014 to increase the credit limit to Five Million Dollars ($5,000,000.00) and amended again on March 2, 2015 to increase the credit line to Six Million Dollars ($6,000,000.00) and amended again on May 1, 2016 to increase the credit line to Nine Million Dollars ($9,000,000.00).

B.  In the Note, to secure all indebtedness of Borrower to NextGear, whether then existing or thereafter arising, Borrower granted NextGear a continuing security interest in the following assets:

> [a]ll of [Borrower's] assets and properties, wherever located, including, without limitation, all equipment of any kind or nature; all vehicles and vehicle parts; all Inventory now owned or hereafter acquired, including, without limitation, all [NextGear] Financed Inventory now owned or hereafter acquired; all amounts in [Borrower's] Reserve held by or on behalf of [NextGear], if any; all documents, documents of title, deposit accounts, accounts receivable, manufacturer rebates and incentive payments, chattel paper, including, without limitation all Receivables and general intangibles now owned or hereafter acquired by [Borrower]; all cash reserves; all of [Borrower's] books and records (including any books and records contained on computer hardware of software or otherwise stored by or on behalf of [Borrower] in electronic or digital form); and all additions, accessions, accessories, replacements, substitutions, and proceeds of any of the foregoing (collectively, the "**Collateral**").

C.  NextGear perfected its interest in the Collateral by filing a UCC-1 Financing Statement with the Florida Secretary of State on October 25, 2007, which financing statement was subsequently: (i) continued on September 18, 2012 (ii) filed on May 20, 2013, (iii) and amended on May 21, 2013.

D.  To further secure the indebtedness and obligations under the Note, Arthur Siegle and Karen Siegle executed an unlimited and unconditional personal guaranty of all indebtedness arising thereunder (the "**Guaranties**")

E.  Borrower filed its Voluntary Petition for Relief under Chapter 11 of the U.S. Bankruptcy Code on March 16, 2017 (the "**Petition Date**"), thereby creating Case No. 17-13165-

JKO (the "**Bankruptcy Case**").

F.      As of the Petition Date, the balance the Borrower owed to NextGear under the Note is *Seven Million, Nine Hundred Forty-Three Thousand, Four Hundred Thirty-Three and 43/100 ($7,943,433.43)* Dollars, which is for advances NextGear made so Borrower could acquire or retain *one hundred twenty-four (124)* specific units of motor vehicle inventory (the "**NextGear PMSI Vehicles**").  Attached hereto as Exhibit A is a true and correct copy of a receivable detail report identifying the NextGear PMSI Vehicles by year, make, model, and vehicle identification number, as well as providing an itemization of the balance due for each vehicle.

G.      Prior to the Petition Date, Borrower sold the eight (8) NextGear PMSI Vehicles identified on Exhibit B (the "**Pre-Bankruptcy Sold Units**"), attached hereto and incorporated herein. The indebtedness under the Note pertaining to the Pre-Bankruptcy Sold Units is Five Hundred Thirty-Four Thousand, Six Hundred Seven and 98/100 Dollars ($534,607.98) plus all interest, fees, charges, and expenses first accruing under the Note from and after March 17, 2017 (the "**Pre-Petition Sold Debt**").

H.      After the Petition Date, through and including Borrower sold the three (3) NextGear PMSI Vehicles identified on Exhibit C (the "**Post-Bankruptcy Sold Units**" and collectively with the Pre-Bankruptcy Sold Units, the "**Sold Units**") attached hereto and incorporated herein. The indebtedness under the Note pertaining to the Post-Bankruptcy Sold Units is Four Hundred Ten Thousand, Seven Hundred Sixty-Nine and 23/100 Dollars ($410,769.23), plus all interest, fees, charges, and expenses first accruing under the Note from and after March 17, 2017 (the "**Post-Petition Sold Debt**," and collectively with the Pre-Petition Sold Debt, the "**Sold Debt**").

I.      The Parties desire for the Court to enter a structured dismissal of the Bankruptcy Case in accordance with 11 U.S.C. §§349(b) and 1112 in accordance with the terms, conditions, and covenants contained herein.

**NOW, THEREFORE**, in consideration of the Recitals, and other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties agree as follows:

**1.      RECITALS.** The Parties acknowledge the foregoing Recitals as substantive portions of this Agreement, and are true and correct in all respects.

**2.      RATIFACTION OF LOAN DOCUMENTS.**  Borrower hereby ratifies and affirms its obligations under the Note, Guaranty, and all other instruments or documents executed in connection with the lender-borrower relationship between the Parties (the "Loan Documents"). Except as otherwise set forth herein, the Loan Documents shall remain in full force and effect, and this Agreement shall not in any manner operate as a waiver of, consent to, or amendment of any other term, condition, covenant, or representation set forth in any of the Loan Documents. Notwithstanding anything to the contrary under the Loan Documents, or otherwise at law or equity, NextGear remains a discretionary lender, and the decision whether to make any loan advance under the Note shall be in the sole and unfettered discretion of NextGear.

**3.     GENERAL RELEASE OF NEXTGEAR.**  As consideration for this Agreement, Borrower (on behalf of itself and its officers, directors, shareholders, employees, agents, parents, affiliates, subsidiaries, successors, and assigns) hereby RELEASES AND DISCHARGES NextGear Capital (and NextGear Capital's officers, directors, shareholders, employees, agents, parents, affiliates, subsidiaries, successors, and assigns) from any and all claims, suits, demands, or other causes of action of any type or nature (whether arising under contract, tort, or otherwise under law or equity) from the beginning of time through the Effective Date of this Agreement.

**4.     INCORPORATION OF CASH COLLATERAL ORDER.**  Sections 4(H) and 6(D) of the Interim Cash Collateral Order are hereby incorporated by reference into this Agreement, and shall survive the termination of the Bankruptcy Case and a notwithstanding Section 349 of the U.S. Bankruptcy Code.

**5.     CONDITIONAL FORBEARANCE.**  NextGear Capital agrees to forbear from declaring an Event of Default, and/or exercising its default remedies, for any acts or omissions of Borrower or any Guarantor that may have arisen prior to March 30, 2017, including, *without limitation*, the creation of the Bankruptcy Case, the failure to provide access to books and records, or any acts or omissions that incurred in connection with the Sold Units and/or their proceeds. Notwithstanding the foregoing, nothing herein shall constitute a waiver of any defaults now existing or hereafter arising.  This forbearance shall remain in full force effect until the earliest of: (1) Borrower defaults under any terms, conditions, or covenants contained herein; (2) from and after April 1, 2017, Borrower otherwise defaults under the Loan Documents, as such Loan Documents are amended hereunder; (3) Borrower, any Guarantor, or any related party takes any legal action against NextGear Capital; or (4) April 1st, 2018.

**6.     PERFORMANCE**.  During any such time period while Borrower is indebted to NextGear Capital under the Loan Documents (including the Indebtedness, or any future indebtedness hereafter arising), unless otherwise excused by NextGear in writing, Borrower shall perform the following, or cause the following to be performed:

A.     Single Depository Institution.  Any proceeds from the Collateral shall be deposited in Borrower's financial institution accounts with T.D. Bank (the "**Accounts**").  In the event Borrower decides to switch financial institutions, Borrower shall immediately notify NextGear in writing.

B.     Documents.  Daily, on or before Borrower's close of business, Borrower shall provide copies of bills of sale for each item of Collateral that is sold during that day, as well as funding notices pertaining to the receipt of funds on that particular day for any item of Collateral. Each week, on or before Friday at 5:00 P.M., Borrower shall provide NextGear with updated statements of the Accounts.

C.     Budgets.  Each month, on or before the first business day, Borrower shall submit a budget for expenditures during the next thirty (30) days for NextGear's consent and approval. Borrower shall not deviate from the budget by more than ten percent (10%) without obtaining NextGear's prior, express written consent.

D. <u>Prohibitions.</u>  Without obtaining NextGear's prior, express written consent, which shall not be reasonably withheld, conditioned or delayed, Borrower shall not (a) not acquire any new item of motor vehicle inventory; (b) borrow money from any other lender (whether under a secured or unsecured basis), except that Borrower may use its existing credit line with Automotive Finance Corporation up to Five Hundred Thousand Dollars ($500,000.00); or (c) sell any NextGear PMSI Vehicle at any automotive auction.

Without obtaining NextGear's prior, express written consent, Dealer may not sell any NextGear PMSI Vehicle for less than the balance owed for that vehicle at the time of sale.

E. <u>Surrender of Cash Proceeds.</u>  Without limiting, modifying, or otherwise reducing Borrower's obligations under the Interim Cash Use Order, upon the dismissal of the Bankruptcy Case, Borrower shall immediately surrender all proceeds from the sale of any unit of NextGear PMSI Vehicles.  Such funds shall be applied to reduce the portion of Indebtedness stemming from the Sold Units, and NextGear shall determine which Sold Units to apply to.

**7. APPLICATION OF SOLD DEBT.**   The remaining Sold Debt that exists after the dismissal of the Bankruptcy Case and Borrower's compliance with Section 6(E) above shall be applied and attributed and added to any other, unsold NextGear PMSI Vehicles, as NextGear may determine in its sole discretion.

**8. ASSIGNMENT.**  **T**his Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective heirs, executors, administrators, assigns, legal representatives, and successors-in-interest.

**9. MERGER.**  This Agreement represents the entire agreement between the Parties concerning the limited forbearance being granted hereunder and/or the Settled SOT Units or SOT Indebtedness.  There are no other written or oral agreements between the Parties which purport to grant limited forbearance, and no promise, enticement or agreement not herein expressed has been made.

**10. CHOICE OF LAW AND FORUM.**   This Agreement shall be governed by, construed by, and enforced in accordance with the laws of the State of Indiana.  Without limiting the effect of Section 2 above, the BORROWER SUBMITS TO THE PERSONAL JURISDICTION AND VENUE OF THE STATE AND FEDERAL COURTS OF MARION COUNTY AND HAMILTON COUNTY, INDIANA, AND AGREES THAT ANY AND ALL CLAIMS OR DISPUTES PERTAINING TO THIS AGREEMENT, OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS AGREEMENT, INITIATED BY ANY OR ALL BORROWER AGAINST NEXTGEAR, SHALL BE BROUGHT IN THE STATE OR FEDERAL COURTS OF MARION COUNTY OR HAMILTON COUNTY, INDIANA.   FURTHER, BORROWER EXPRESSLY CONSENTS TO THE JURISDICTION AND VENUE OF THE STATE AND FEDERAL COURTS OF MARION COUNTY AND HAMILTON COUNTY, INDIANA, AS TO ANY LEGAL OR EQUITABLE ACTION THAT MAY BE BROUGHT IN SUCH COURT BY NEXTGEAR AND WAIVES ANY OBJECTION BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, OR FORUM NON CONVENIENS WITH

RESPECT TO SUCH ACTION. BORROWER FURTHER ACKNOWLEDGES AND AGREES THAT NEXTGEAR CAPITAL RESERVES THE RIGHT TO INITIATE AND PROSECUTE ANY ACTION AGAINST BORROWER IN ANY COURT OF COMPETENT JURISDICTION, AND BORROWER CONSENTS TO SUCH FORUM AS NEXTGEAR MAY ELECT.

**11.** **WAIVER INEFFECTIVE.** No waiver, modification, or amendment of any term, condition, or provision of this Agreement shall be valid or have any force or effect unless made in writing and signed by all Parties to this Agreement.

**12.** **SEVERABILITY.** Should any provision of this Agreement be held invalid or illegal, such invalidity or illegality shall not invalidate the whole of this Agreement, but rather the Agreement shall be construed as if it did not contain the invalid or illegal part, and the rights and obligations of the Parties shall be construed and enforced accordingly.

**13.** **SURVIVAL.** The representations, warranties, covenants, and consideration provided by the Borrowers under this Agreement shall survive the termination of this Agreement.

**14.** **NO PRESUMPTION AGAINST DRAFTER**. Each of the Parties has jointly participated in the negotiation and drafting of this Agreement. In the event of an ambiguity or a question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by each of the Parties hereto an no presumptions or burdens of proof shall arise favoring either Party by virtue of the authorship of any provisions of this Agreement.

**15.** **SIGNATORY WARRANTY.** Each of the individuals executing this Agreement as agent on behalf of a principal represent and warrant, in their respective individual capacities, that he or she has full power and agency authority to enter into this Agreement and bind his or her respective principal, that all necessary consents and approvals have been obtained, and that no other consent, approval or action is required.

**16.** **NOTICES**. Unless otherwise instructed by NextGear Capital in writing, all notices or reports under this Agreement shall be sent by e-mail to George Lounder, Risk Manager for NextGear Capital, at George.Lounder@nextgearcapital.com, with a copy via e-mail sent to Christopher M. Trapp, Director of Recovery for NextGear Capital, at chris.trapp@nextgearcapital.com.

**17.** **EXECUTION.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one and the same instrument.

**18.** **GUARANTOR APPROVAL.** The Guarantors have ratified and assented to this Agreement, and have further agreed to release NextGear Capital, as set forth in Exhibit D.

*[Remainder of Page Intentionally Left Blank]*

NEXTGEAR CAPITAL, INC.

/s/ _____

By: __Christopher Trapp__

Title: __Counsel__

Date: __4/20/17__

INTERNATIONAL AUTO GROUP OF SOUTH FLORIDA, INC.

/s/ _____

By: __Arthur Grifle__

Title: __President__

Date: __4/19/2017__

# EXHIBIT A
**(SEE ATTACHED RECEIVABLE DETAIL REPORT)**

# EXHIBIT B
(PRE-PETITION SOLD UNITS)

| Stock Numbers | VIN (Last 6) | Year, Make, Model | Total Debt 3/17/2017 |
|---:|---:|---|---:|
| 487 | 081920 | 1989 Ferrari Mondial | $ 32,388.36 |
| 491 | 501965 | 1958 Mercedes 190SL | $ 90,991.28 |
| 595 | 342160 | 1995 Porsche 911 Carrera 4 | $ 50,263.34 |
| 609 | 186794 | 1976 Cadillac Eldorado | $ 31,830.51 |
| 615 | 281187 | 1947 Chevrolet pickup | $ 41,825.47 |
| 621 | 378134 | 1966 Ford Mustang | $ 35,829.12 |
| 631 | 024218 | 1963 Mercedes 190 SL | $ 99,422.77 |
| 634 | 078624 | 1988 Ferrari Testarossa | $ 152,057.13 |

# EXHIBIT C
## (SEE LIST OF POST-PETITION SOLD UNITS THROUGH 3/30/17)

| Stock Numbers | VIN (Last 6) | Year, Make, Model | Total Debt |
|---:|---:|---|---:|
| 557 | 115973 | 1999 Ferrari F355 Spider | $ 72,616.30 |
| 592 | 44991 | 1983 Ferrari 512BBi | $ 261,156.25 |
| 603 | 112904 | 1988 Ferrari F355 | $ 76,996.68 |

# EXHIBIT D
## (GUARANTOR RATIFICATION AND RELEASE)

Arthur Siegle and Karen Siegle, in their respective individual capacities, hereby consent to, ratify, acknowledge, and approve the foregoing Compromise Agreement entered into by and between NextGear Capital, Inc. ("**NextGear**") and International Auto Group of South Florida, Inc.

As additional consideration for the consideration NextGear is providing under the Compromise Agreement, Arthur Siegle and Karen Siegle (on behalf of themselves and their respective heirs, successors, and assigns) hereby RELEASE AND DISCHARGE NextGear (and NextGear's officers, directors, shareholders, employees, agents, parents, affiliates, subsidiaries, successors, and assigns) from any and all claims, suits, demands, or other causes of action of any type or nature (whether arising under contract, tort, or otherwise under law or equity) from the beginning of time through the Effective Date of this Agreement.

_____
**/S/ ARTHUR SIEGLE**

_____
**/S/ KAREN SIEGLE**